UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 10 CR 155-1 |
| | ) | Judge William J. Hibbler |
| GONZALO GARCIA-AVILA | ) | |

DEFENDANT'S RESPONSE TO
GOVERNMENT'S *SANTIAGO* PROFFER

Defendant Gonzalo Garcia-Avila, through his counsel, Francis C. Lipuma, respectfully submits to this Honorable Court the following response to the government's *Santiago* proffer. (Doc. 144). The government's proffer should be rejected and the Court should bar the admission at trial of the purported coconspirator statements. Simply stated, the government is attempting to design an overarching conspiracy between this case and the case styled, *United States v. Quiroz, et al.*, No. 10 CR 255, pending before Judge Robert M. Dow, Jr., and, in support of its proffer, has identified statements that would not be admissible at the trial of the defendant for constitutional reasons. In addition, the government seeks to introduce statements between others before the defendant could even arguably be considered to be a member of any conspiracy. In sum, the conversations the government seeks to introduce under Rule 801(d)(2)(E), Fed.R.Evid., are not admissible because the defendant and the declarants were not members of the particular conspiracy suggested by the government, and most of the identified statements were not made during and in furtherance of any conspiracy in which the defendant was a member.

We begin with one example of purported statements from the *Santiago* proffer which in no way would be admissible against the defendant given his constitutional protections. The government's submission asserts that upon his arrest, co-defendant Rosendo Jimenez waived his

*Miranda* rights (of course, Jimenez disputed this during his motion to suppress hearings), and the government relates as follows:

> Among other things, Jimenez stated that he had just dropped off a vehicle matching the description of the CS's vehicle. When agents asked Jimenez if there were any drugs in the vehicle, Jimenez stated that he had picked up the vehicle from an Hispanic male wearing a black leather jacket and blue jeans. Jimenez stated that the person in the leather jacket was going to pay him $300 for delivering the ice, which I understood to mean the methamphetamine [sic]. (Doc. 144 at 24).

Initially, there has been no indication from the government that Jimenez will be a witness for it and against the defendant. Jimenez's purported statements, therefore, would not be admissible at the defendant's trial given his Confrontation Clause protections. It is violative of the Federal Rules of Evidence as well as the defendant's fair trial rights under the Fifth and Sixth Amendments to admit the subject statements where the perceptions, memories, reliability, and honesty of Jimenez and similarly-situated others cannot be tested through cross-examination.

The Confrontation Clause bars admission of Jimenez's statements and others like them. *See Crawford v. Washington*, 541 U.S. 36 (2004) (out of court testimonial statements barred); *Davis v. Washington*, 547 U.S. 813 (2006) (defining testimonial). For the statements to be even arguably properly admissible, the government would be required to call Jimenez as a witness at trial. Because there has been no indication from the government that Jimenez will be called as their witness, the holding of the *Crawford* Court clearly prohibits the admission of these testimonial hearsay statements because the declarant is unavailable to testify and the defendant has no opportunity to cross-examine him. *Crawford*, 541 U.S. at 51 (explaining that the Confrontation Clause "applies to 'witnesses' against the accused – in other words, those who 'bear testimony.'"). All of the hallmarks of confrontation, that is, physical presence, oath, cross-examination, and observation of the witness'

demeanor by the jury will be lost, and the defendant's right to confrontation clearly will be compromised should these and similar out-of-court declarations be allowed at trial.

Likewise, the government identifies statements purportedly made by Quiroz and Mendez (neither of whom is charged in the case before this Court), which were made after the defendant was arrested. (Doc. 144 at 24). Those alleged statements are inadmissible because they were not made in furtherance of any conspiracy. As noted, the defendant already had been arrested and was in federal custody.

Part of the problem in evaluating the government's submission is that, first, it is not clear who the government's witnesses will be, and, second, the government seems to offer contradictory information about its witnesses.[1] For example, in one instance the government avers it will call "the CS [the informant] and the UCO [undercover officer] to establish the existence, nature, scope and illegality of the conspiracy." (Doc. 144 at 10). In another instance, the government avers that Quiroz too will be called. (Doc. 144 at 25). Yet, the government also implicitly states that Quiroz is not a member of the charged conspiracy: "Other members of that conspiracy include co-defendant Figueroa, Rosendo Jimenez, and Francisco Mendez. Statements by another man, Pedro Quiroz, also are relevant to show the context of the conspirators' statements and the events of February 24, 2010 to March 1, 2010." (Doc. 144 at 8, n. 6).

The language used by the government in that passage concedes the proposition that Quiroz is not a coconspirator of the defendant. That is, he is not specifically identified as a member of the

---

[1] Part of the problem too is that the government has not yet tendered all of the transcripts it intends to introduce at trial, and thus it is difficult for the defendant to precisely challenge the purported coconspirator statements at issue. Moreover, a witness list has not yet been submitted so the difficulty in answering the government's proffer is increased.

conspiracy like the other men are, and the government is seeking the admission of Quiroz's statements on an alternate theory of admissibility. As noted above, Quiroz was charged in a separate case pending before Judge Dow, which fact buttresses the proposition that he is not part of the conspiracy charged in this case. If the government believed he was, he would have been charged in this case rather than in another case. For all of these reasons, the statements of Quiroz are inadmissible at the defendant's trial because they are not in the nature of Rule 801(d)(2)(E).

Even if the Court were to disagree with that point, no statements of Quiroz or any other person would be admissible against the defendant prior to February 24, 2010, which is the date the defendant allegedly first met with the informant. The government has produced no statements of the defendant prior to that date, nor any evidence showing any criminal endeavor on his part. Those alleged statements of Quiroz and others, (as identified in the government's proffer at page 9), are thus not admissible against the defendant for they are not in furtherance of any conspiracy in which he is a member.

"There must be evidence that there was a conspiracy involving the declarant and the nonoffering party[,]" and the proof must be supported by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171 (1987). On February 23, 2010, the speakers (Quiroz and the CI) obviously were not jointly engaged in the criminal venture that was being advanced by the speakers. Thus, the government has failed to establish the existence of a specific criminal conspiracy having that particular criminal act as its objective.

"[E]ven in the context of organized crime, there is a limit to the use of Rule 801(d)(2)(E) to admit coconspirator testimony. The district court in each instance must find the existence of a specific criminal conspiracy[.]" *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). The

government must make a sufficient showing by independent evidence of a particular conspiracy among the defendant and the declarants. While the hearsay statement itself may be considered in establishing the existence of the conspiracy, "there must be some independent corroborating evidence of the defendant's participation in the conspiracy." *Id*. at 82 (citation omitted). Of course, the government comes up empty in terms of the existence of any evidence that the defendant had anything to do with Quiroz during his initial contacts with the informant.

The essence of a conspiracy or joint venture is an agreement to accomplish an unlawful act. *E.g.*, *Iannelli v. United States*, 420 U.S. 770, 777 (1975). The scope of a conspiracy involving a defendant is defined by the scope of the conspiratorial agreement. *Grunewald v. United States*, 353 U.S. 391, 396 (1957). Although a defendant need not know all of the conspiracy's details, he must know and be connected to "the essential nature of the plan." *Blumenthal v. United States*, 332 U.S. 539, 557 (1947). The government must establish that the defendant intended to join and associate himself with the conspiracy's criminal design and purpose. *See United States v. Townsend*, 924 F.2d 1385, 1390 (7th Cir. 1991). Coconspirator statements made in the course of a conspiracy in which a defendant was not a member are inadmissible against that defendant. *E.g.*, *United States v. Murphy*, 193 F.3d 1, 6 (1st Cir. 1999); *United States v. Arvanitis*, 902 F.2d 489, 500 (7th Cir. 1990).

Here, no matter the government's threshold burden of proof, the *Santiago* proffer fails to show the defendant's knowledge of, or participation in Quiroz's alleged criminal activities prior to February 24, 2010. Simply stated, no prospective government witness, nor any recording or document, in any way connects the defendant in a criminal light to the alleged discussions among the informant, Quiroz, and others regarding a prospective joint venture. The defendant denies that the government has established, even as a preliminary matter, his participation in any unlawful

5

agreement. However, even if it were assumed for the sake of argument that the government's theory regarding an agreement is sufficiently stated within the government's proffer, the government's request for admission of statements against the defendant prior to his appearance must still fail because the object and the core agreement simply did not contemplate the disparate criminal endeavors of Quiroz in his conversations with the informant. Consequently, out-of-court statements relating to joint criminal ventures in which the defendant lacks connection are inadmissible against him.

Even if the government could somehow establish the defendant's membership in the conspiracy as a preliminary matter, the bulk of the statements identified in the government's submission still are inadmissible because they were not made during and in furtherance of the charged conduct. To admit out-of-court statements under the coconspirator exception to the hearsay rule, the government must prove by a preponderance of the evidence that: (1) a conspiracy or joint venture existed; (2) the defendant and the declarants were members of that particular conspiracy or joint venture; and (3) the proffered statements were made during the course and in furtherance of that particular conspiracy or joint venture. *E.g.*, *Bourjaily*, 483 U.S. at 175; Fed.R.Evid. 801(d)(2)(E).

This exception to the hearsay rule is "narrow," *Krulewitch v. United States*, 336 U.S. 440, 444 (1949), and the "in furtherance" requirement is "a limitation on the admissibility of coconspirators' statements that is meant to be taken seriously." *United States v. Doerr*, 886 F.2d 944, 951 (7th Cir. 1989). Importantly, mere "idle chatter," narrative declarations, and superfluous casual conversations are not statements in furtherance of a conspiracy. *Id.*; *see also United States v. Santos*, 20 F.3d 280, 285-86 (7th Cir. 1994). As the Seventh Circuit Court of Appeals consistently has stated:

> But if it is idle chatter, it is not admissible. The concern with reliability that animates other rules of evidence reasserts itself here. Mere chitchat, casual admissions of culpability, and other noise and static in the information stream are not admissible . . . . They are said not to be in furtherance of the conspiracy, but the real point is that they are insufficiently reliable to be considered by a jury. *United States v. Pallais*, 921 F.2d 684, 688 (7th Cir. 1990).

Because they were not participants in any conspiracy or in the same conspiracy, the purported statements did not further the goals of the subsequent alleged joint venture or constitute part of the normal information flow between coconspirators. Indeed, the proffered statements do not in any way facilitate the charged conduct or any other conspiracy or joint venture. At best, they amount to narrative declarations about past events or casual admissions of culpability, that is, noise and static, all of which are inadmissible because "they are insufficiently reliable to be considered by a jury." *See Pallais*, 921 F.2d at 688; *Santos*, 20 F.3d at 286.

Moreover, certain of the statements attributed to the purported coconspirators cannot be allowed into evidence given their lack of relevance and undue prejudice. Specifically, the defendant refers to the meeting at the restaurant on February 24, 2010. During that meeting the defendant walked away from the men and they continued to speak while the defendant was away. (The government confirms this event in its submission in stating: "Later, after Garcia-Avila returned . . . .") (Doc. 144 at 13). Even assuming the accuracy of the government's characterization of the conversation, it is the defendants' position that none of this evidence should be admitted at the trial because it is not relevant to any triable issue and would serve only to create undue prejudice to him because of his absence from the discussions. Each of the purported statements should be barred from trial, pursuant to Rule 403, Fed.R.Evid., as the probative value of the statements, if any, is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, and the great probability of misleading the jury in its ascertainment of the truth.

Rule 403 serves as a ground for excluding party admissions and coconspirator statements if the probative value is substantially outweighed by its potential for unfair prejudice. Weinstein's Federal Evidence §801.30[4] (Joseph M. McLaughlin, 2d ed. 2004); *United States v. Centracchio*, 265 F.3d 518, 530 (7th Cir. 2001). As expressed in Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

For all of these reasons, it is respectfully submitted that the Court should reject the government's *Santiago* proffer and bar the admission of the purported coconspirator statements.

Respectfully submitted,

s/ Francis C. Lipuma
Francis C. Lipuma
Attorney for Defendant
Gonzalo Garcia-Avila

Francis C. Lipuma
300 South Wacker Drive
Suite 1700
Chicago, Illinois 60606
(312) 675-0089

CERTIFICATE OF SERVICE

I, Francis C. Lipuma, an attorney, do hereby certify that I caused a copy of "Defendant's Response To Government's *Santiago* Proffer" to be served upon:

Christopher R. McFadden
Renato Mariotti
U.S. Attorney's Office
219 South Dearborn Street
Chicago, IL 60604

pursuant to Fed.R.Crim.P. 49, Fed.R.Civ.P. 5, L.R. 5.5, and the General Order on Electronic Case Filing of the United States District Court for the Northern District of Illinois, Eastern Division.

s/ Francis C. Lipuma
Francis C. Lipuma
300 South Wacker Drive
Suite 1700
Chicago, IL 60606
(312) 675-0089